338 So.2d 1177 (1976)
Mrs. Pat McEnery BENTLEY, Plaintiff-Appellee,
v.
INDUSTRIAL FIRE PROTECTION COMPANY, Defendant-Appellant.
No. 13038.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1976.
*1179 Farrar & Perry by Bennie Mac Farrar, Monroe, for defendant-appellant.
Johnson, Johnson & Joyce by Don H. Johnson, Monroe, for plaintiff-appellee.
Before PRICE, HALL and MARVIN, JJ.
MARVIN, Judge.
Defendant appeals a judgment for damages to plaintiff's property arising out of the construction of a building by defendant on its property immediately north of plaintiff's property.
Pertinent details, roughly to scale, from plats of surveyors are reproduced to facilitate an understanding of the issues presented.
 *1180 Defendant's land enjoys the status of a dominant estate for natural drainage across plaintiff's southerly and servient estate. Natural drainage from defendant's land of greater elevation, originally and before construction of its building, was generally towards the southeast and across the northeasternmost part of plaintiff's land.
The lands front on a rural blacktop road in Ouachita Parish with a ditch, constructed to drain water southerly, parallel to the road. A culvert and gravel driveway afford access across the ditch. An old fence ran along the common boundary between plaintiff and defendant.
Defendant graded or cut down the northwesternmost area of his lot to level it for the construction of his building. A natural swale extending from the center of defendant's property which drained southeasterly towards and across plaintiff's property was leveled, sloped and reshaped to relocate the drainage pattern further to the rear of the property, but to drain onto plaintiff's property at approximately the same place as before construction. The lower court properly observed that defendant's lot is now relatively level on the front (west) portion; that it slopes rather sharply behind or east of defendant's building and then slopes less sharply generally towards the southeast.
Plaintiff complained below that defendant destroyed portions of the old fence on the common boundary; committed various trespasses on her property and caused dirt to wash down on her property.
The record supports these observations and findings of the lower court:
". . .[M]any of the conditions . . . complained about . . . were either superficial or purely temporary and unavoidable consequences [of the construction]. . .[any construction] would have created temporary rerouting of some water flow and would have caused some dirt to wash . . . Such trivial . . . matters are the natural consequences of permissible use of the dominant estate and cause no real damage to the servient estate for which recompense is due. * * *
". . . In constructing the slab [for an air conditioning compressor on or near the common boundary] and in digging ditches for . . . service lines [to] the building, defendant clearly encroached upon plaintiff's property with workmen and equipment, piled some dirt and debris across the line [on plaintiff] and also substantially disturbed the natural drainage, at least temporarily. Some twenty feet of an old fence . . . were destroyed . . . Moreover, with such substantial disturbances of soil [by defendant in the construction of the building, less than 20 feet from the common boundary] . . . unnatural quantities and directional flow of water surged onto and across plaintiff's driveway, depositing substantial quantities of clay soil . . . and washing out the ground cover of [plaintiff's culvert] . . . Defendant was guilty of undue disturbance of existing conditions under Articles 660 and 667 of the Civil Code of negligent encroachment under [La.C.C.] Art. 2315, causing at least temporary damage to plaintiff and interference with [her] . . . use and enjoyment . . .
". . . [Defendant] did not fully succeed in [its] effort [to maintain the natural watershed]. . . . [O]ne rather deep ditch has eroded . . . southeastward across the common line . . . [Substantial flow and erosion of soft `new' dirt near the building has had the effect of collecting and `localizing' water . . . to cause a specific burden on the servient estate . . .
". . .[M]ore than negligible erosion and washing . . . has occurred . . . resulting] in the deposit of several inches of [soil] onto plaintiff's property, both in areas where natural flow formerly crossed and at other points not previously affected. . . .[A]t the very least there will be on the rear portion of plaintiff's lot substantial areas of *1181 unsightly and disturbed surface not previously present. * * *"
Defendant asserts the trial court erred in "refusing to consider" that utility company employees laid utility lines to defendant's building and that plaintiff's damages "could have been caused" by these employees [Spec. 1 and 7]. In view of the testimony of the defendant's superintendent of the construction project that the ditches were dug by defendant's employees, and statements made in the lower court's written reasons for judgment that defendant encroached upon plaintiff's property in constructing the slab for the compressor and in digging ditches for utility lines, and that the conditions caused by defendant were "compounded by activities of utility company workmen," we find these contentions without merit. Likewise, we find that the trial court did consider (1) the alleged heavy rainfall; (2) expert testimony as to the location of the boundary; (3) the age and condition of the fence on the common boundary; and (4) the alleged difference in color of the dirt on the rear of plaintiff's property [Spec. 3, 4, 6 and 9].
The remaining contentions of defendant relate to whether its trespass was in moral and legal good faith; the legal superiority defendant enjoyed as the dominant estate for natural drainage purposes, and the effect on the measure of damage by plaintiff's failure to produce expert testimony as to the labor and materials necessary to restore her property to the condition it was in before defendant began construction.
Defendant does not contest plaintiff's peaceful possession of her property for more than one year prior to the institution of suit. Defendant contends that it cannot be found in bad faith because the trespass, if any, was neither forcible nor ill-intended and was not for the purpose of converting any of plaintiff's property to its own use.[1] While there was no conversion by defendant of plaintiff's property, defendant's actions in destroying a portion of the old fence and otherwise ignoring the boundary and driving and operating construction equipment sometimes on plaintiff's land, constituted an illegal and reckless disregard of plaintiff's rights. Plaintiff was deprived, however temporarily, of the peaceful and uninterrupted use and enjoyment of her property and defendant's cries of good faith in an attempt to mitigate damages are of no avail.
Defendant's actions legally constitute at least a quasi offense, for which defendant is responsible in damages. C.C. Art. 1934, Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20 (1946).
Being the dominant estate of a servitude of drain does not relieve defendant from damages under the circumstances. The trial court found that defendant's construction caused its property to erode and create ditches near the building and onto plaintiff's property which had the effect of collecting and localizing drainage onto plaintiff's property. This increased the burden on the servient estate and caused some of the damage to plaintiff. C.C. Arts. 778, 667.

QUANTUM
Defendant also complains that the lower court erred in assessing damages at $2,000 and by not dismissing entirely plaintiff's claim for damages as damnum absque injuria since plaintiff failed to prove or offer evidence of the "value" of her damage or the cost of restoring plaintiff's property to its former condition.
*1182 The lower court said some of the damage caused by defendant had been ameliorated by time to a "considerable extent." Construction began October of 1974, and was not fully completed when trial occurred on January 20, 1976. The more extensive damage to plaintiff's property in the culvert area and in the northeast corner washing area, by the trial court's findings, would require some expenditure of labor and material, and we infer, a considerably longer time to recover from the effects of the damage. Plaintiff herself repaired the damage to her driveway.
In Louisiana, only compensatory and not punitive or exemplary damages are recoverable for injury done to property. Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656 (1940).
Plaintiff here did not specifically allege damages for mental anguish. Plaintiff did allege general or "extensive" damages, deprivation of use and benefit of her property and, in connection with her injunctive demands, she alleged her "fear" that defendant would "continue" its operation which was causing her damage.
When plaintiff attempted to testify as to her mental anxiety arising from defendant's actions, the lower court sustained defendant's objection that such damages had not been specifically alleged. In view of the circumstances of this case and plaintiff's general allegations, we believe the trial court erred in this respect and that it would have been proper to hear evidence about plaintiff's anxiety.
In Layne Louisiana Co., supra, the Supreme Court observed that it is impossible to believe that a person suffering a flagrant violation of her property rights, would not, of necessity, be vexed and aggrieved.
In trespass cases of this type, mental anguish is not an item of special damage which must be "specifically alleged" under C.C.P. Art. 861, but is an item which may be considered under general allegations of damage and deprivation of use, such as are here alleged. Defendant could have, but did not, utilize the dilatory exception of ambiguity or vagueness under C.C.P. Art. 926 to make plaintiff itemize or specify her broad and general allegations of damage, deprivation and fear. Riley v. Carver General Ins. Agency, Inc., 279 So.2d 698 (La.App. 4th Cir. 1973), writ denied. Items or areas of damage which may be admissible under a general allegation of damage are not subject to the objection afforded by C.C.P. Art. 861, but are subject to the dilatory exception under C.C.P. Art. 926, which must be filed in limine or otherwise is waived.
Plaintiff is entitled to general damages under C.C. Art. 1934.
In the assessment of damages for an offense or quasi offense arising out of trespass, much discretion is left to the trial judge, but the damage must be certain and the discretion exercised only to the extent of the damage as ascertained from all the facts and circumstances. Angelloz v. Humble Oil Co., 196 La. 604, 199 So. 656 (1940). Considering all the facts and circumstances here, including the injury to plaintiff's property, interference with her enjoyment of her property, and the anxiety that plaintiff, of necessity, experienced during the 16 or more months defendant conducted its operations, we cannot say that the lower court abused its discretion in determining the award.[2]
We are obligated by C.C.P. Art. 2164 to render judgment which is just, legal and proper upon the appellate record, and while we do not adopt fully the trial court's reasons for judgment, we believe the record supports the result below and here.
At appellant's cost, judgment is
AFFIRMED.
NOTES
[1] The lower court noted that while there may have been some confusion as to the boundary at the beginning of construction, the boundary was "thoroughly established shortly thereafter . . . [and] . . . the construction activities clearly did cross the common boundary. It should also be noted that defendant's construction superintendent admitted he instructed a dozen operators to go onto plaintiff's property to push down a tree (allegedly on defendant's property) near the boundary without asking plaintiff's permission.
[2] Plaintiff did briefly testify to her anxiety before defendant's objection was sustained.