394 So.2d 1252 (1980)
Denver F. WENDORF et al., Plaintiff-Appellant,
v.
Earl CORLEY et al., Defendant-Appellee.
No. 7931.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
Rehearing Denied February 9, 1981.
*1253 Gist, Methvin, Hughes & Munsterman, Dorwan G. Vizzier, Alexandria, for plaintiff-appellant.
Charles B. Bice, Winnfield, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and SWIFT, JJ.
SWIFT, Judge.
This case and our docket No. 7932, entitled "Wendorf Realty Company, Inc. v. Earl Corley, et al.", 394 So.2d 1256, have been consolidated for trial and appeal as they arose from a trespass by defendants, Earl Corley and James Delaney, in building a fence on the property of plaintiff, Wendorf Realty Co., Inc. (Wendorf Realty), without its consent. From a judgment denying their claims for damages, the plaintiffs have appealed.
Wendorf Realty owns land in the Northwest Quarter of Section 34, Township 6 North, Range 1 West, in Grant Parish, Louisiana. The northern boundary of Wendorf Realty's property is the southern boundary of property owned by defendant, Earl Corley. Their common boundary is also the southern boundary of the North Half of the Northwest quarter of Section 34.
A public road referred to as Hooper Road proceeds generally in a northeast to southwest direction across the North Half of the Northwest Quarter of Section 34. It makes a turn more to the west near the southern boundary of the North Half of the Northwest Quarter and gradually crosses into the South Half thereof.
During 1974 some of Corley's cattle went through an old fence and grazed on the cotton crop on Wendorf Realty's land. Mr. Wendorf, the principal shareholder in Wendorf Realty, complained to Corley. In response to these complaints in February, 1975, the defendants constructed a fence to enclose Corley's land. The fence, which Corley said he believed was on the boundary line between his property and that of Wendorf Realty, was erected south of Hooper Road after its westerly turn near the southern boundary of said North Half of the Northwest Quarter. It encroached from about four to seventy feet in places on Wendorf Realty's property. Also, it extended without a gate or "cattle gap" across an old drive to a vacant and ramshackle house situated on Wendorf Realty's land.
Mssrs. Wendorf and Kemp testified they had agreed to lease 30 acres of the property adjacent to the house for the purpose of raising watermelons. Wendorf Realty was to receive ¼ of the profits from the crop *1254 and Wendorf and Kemp would split the other ¾ths. It was also agreed that Kemp would rent the house for $75.00 per month after necessary repairs were made by Wendorf Realty so that Kemp's family could live therein.
Mr. Wendorf testified that after the fence was constructed he called Corley on the telephone to complain about the fence, but Corley hung up on him. No demand for removal of the fence was ever made. No watermelons were planted on the 30 acres.
On February 18, 1976, Wendorf and Kemp filed suit against Earl Corley and James Delaney for $18,000.00 damages allegedly sustained due to the loss of the watermelon crop. Wendorf Realty also filed a separate suit against the same two defendants claiming the following damages by reason of the trespass:

Cost of cattle gap ...................... $ 4,750.00
Cost of installation of cattle
 gap ................................... 2,500.00
Loss of 1/4 of watermelon crop .......... 6,000.00
Loss of cotton by virtue of
 cattle damage ......................... 12,500.00
Cost of construction of fence
 on north property line ................ 5,050.00
Loss of rent at $75.00 per
 month ................................. 900.00
Cost of survey .......................... 400.00
Damages to dog houses as a
 result of fire ........................ 2,850.00
Damages to barn as a result
 of fire ............................... 1,050.00
 __________
TOTAL ................................... $36,000.00

Defendants denied practically all of the allegations of the petitions and pleaded one year prescription as to the claims for cotton damages.
By agreement of the parties and with the court's consent the matter was converted into a boundary action in addition to the claims for damages. Randolph B. LaCroix, Jr. was appointed to survey the boundaries and fences located between the lands of Wendorf Realty and Earl Corley. All of the parties accepted the completed survey and it was agreed that judgment would be rendered fixing the common boundary as established thereby. It reflects that the fence constructed by the defendants encroached on Wendorf Realty's property. This portion of the judgment and the order directing the defendants to remove the fence from Wendorf Realty's land, of course, are not in contest on the appeal. The plaintiffs have abandoned all claims for damages except loss of the watermelon crop and rentals for the house.
The trial judge denied the claim for the watermelon crop stating, "Access to the tract was available at other places. Access could have been easily obtained by plaintiffs' installing a cattle gap and removing the fence across the entrance or simply installing a `Texas gap' at the entrance. Additionally, such damages are too speculative for the court to rely on as the testimony of the amount of the crop is based on the false assumption that the 30 acres contained well-drained, sandy loam soil. Plaintiffs also failed to mitigate damages by planting the 30 acres in soybeans as was done on the contiguous 600 acres."
He also denied Wendorf Realty's claim for the loss of rent, because he found that in order to make the house habitable the landowner would have to spend an amount greatly in excess of the $900.00 allegedly lost.
It is well settled in Louisiana that damages should be awarded for illegal trespass on one's property, even when committed in good faith and though proof of the amount of the damages actually sustained by the proprietor be uncertain. Layne Louisiana Co. v. Superior Oil Company, 209 La. 1014, 26 So.2d 20 (La.1946); Bihm v. Hirsch, 193 So.2d 865 (La.App. 3 Cir. 1967); Bentley v. Industrial Fire Protection Co., 338 So.2d 1177 (La.App. 2 Cir. 1976); Folds v. Red Arrow Towbar Sales, 378 So.2d 1054 (La. App. 2 Cir. 1979).
In American Employers Insurance Co. v. Schoenfield, 144 So.2d 595 (La.App. 4 Cir. 1962), the court said:
"One injured through trespass or fault of another is entitled to full indemnification *1255 for the damages caused thereby, and, where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. LSA-C.C. Art. 1934(3);" [Additional authorities omitted.]
We agree with the trial judge that the proof offered to establish the claimed loss of profits from the watermelon crop was speculative and tenuous. Also, it may be subject to question as to just how serious Mr. Wendorf's intentions were in regard to cultivating the subject 30 acres in view of his testimony that another lessee was not permitted to grow soybeans thereon after the fence was erected (as was done with the remaining 600 acres of the corporation's lands) simply because a suit was going to be filed for the trespass. Nevertheless, had the parties actually used the other available accesses while growing watermelons they necessarily would have suffered some inconvenience as these were further away than the entrance which was closed by defendants' fence. Under the circumstances, we believe the trial judge was manifestly in error in failing to allow compensation therefor. We will award $700.00 to Messrs. Wendorf and Kemp as the damages caused them by the trespass.
The corporate plaintiff did not suffer any mental anguish as a result of this trespass, but it is entitled to an award for loss of some rental. Benedict v. Lynch, 81 So.2d 91 (La.App. 2 Cir. 1955). As stated, the trial judge rejected this claim based on his finding that the cost of repairing the house was in excess of the alleged lost rentals. It is obvious that extensive repairs were required to make this dilapidated house habitable and the record does not indicate any probability of future rentals after the alleged watermelon crop was harvested from which the amount invested for such repairs could be recouped. However, again we think the trial judge was manifestly in error in not making some award for this item and conclude that Wendorf Realty Company, Inc., was damaged in this respect to the extent of $350.00.
For the foregoing reasons, the judgment of the district court in our docket No. 7931 is affirmed in part and reversed in part and, accordingly, it is ORDERED, ADJUDGED and DECREED that there be judgment in said suit in favor of the plaintiffs, Denver F. Wendorf and Isaac J. Kemp, and against the defendants Earl Corley and James Delaney, in the sum of $700.00 with legal interest thereon from judicial demand until paid and for all costs of the suit, except the expense of the survey, plat and proces verbal of R. B. LaCroix, Registered Land Surveyor, which cost is taxed and assessed in our No. 7932. In all other respects, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
ON APPLICATION FOR REHEARING
PER CURIAM.
In an application for rehearing plaintiffs-appellants have called our attention to the fact that after trial and before rendition of judgment by the trial court defendant, Earl Corley, died and his surviving spouse and universal legatee, Maudie Lee Delaney Corley, has been duly substituted in his place as a defendant herein. Consequently, the decree heretofore rendered by us in the above numbered and entitled suit must be and is hereby amended to substitute Maudi Lee Delaney Corley as a defendant in the place of the deceased defendant, Earl Corley. In all other respects the judgment rendered by this court in this case shall remain as written.