447 So.2d 1177 (1984)
Don K. BROWN and F.M. Brown, Plaintiff-Appellant,
v.
Billy Ray BEDSOLE, et al., Defendant-Appellant.
No. 83-527.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Rehearing Denied April 3, 1984.
Writ Denied May 11, 1984.
*1178 J. Jay Caraway, Shreveport, for defendant-appellant.
Don M. Burkett, Many, for plaintiff-appellant.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
This is a trespass action based on alleged wrongful cutting of timber in violation of LSA-R.S. 56:1478.1.
The plaintiffs are Don K. Brown and F.M. Brown (the Browns). The Browns sued defendants, Billy Ray Bedsole, his insurer, Georgia Casualty and Surety Company, and Jerry M. Smith. Plaintiffs alleged that Billy Ray Bedsole for and on behalf of Jerry M. Smith trespassed on their property in Sabine Parish and cut timber valued at $1700. The Browns alleged the trespass was in bad faith since their property line was clearly marked; therefore, they sought triple damages as provided in R.S. 56:1478.1 plus general damages and attorney's fees.
Defendants, Billy Ray Bedsole (Bedsole) and his insurer denied any wrongdoing on Bedsole's part. They admitted that Bedsole cut the timber but alleged that Jerry M. Smith designated the timber to be cut as being on Smith's property and that Bedsole paid Smith for the timber, the value of which was appraised at $1,153.58. Bedsole and his insurer also filed a third party demand against Smith seeking recovery of the price they paid to Smith for the timber and, in the alternative, seeking complete indemnification from Smith should they be held liable for damages for trespass or otherwise.
Defendant, Jerry M. Smith (Smith), whose property adjoined the Browns' property, first answered the Browns' petition with a general denial. He subsequently supplemented his original answer affirmatively alleging that he was in legal possession of the property in dispute from which the timber was cut. Smith later filed a reconventional demand asserting a possessory action; he alleged that for many years prior to and up until the time of plaintiffs' suit he and his ancestors in title had maintained possession of the "Disputed Property" by the cutting of timber and other corporeal acts of possession within visible bounds. He based his right to bring a possessory action on both a disturbance in law and a disturbance in fact. Smith prayed that he be recognized as the possessor of the disputed property and to be restored to its possession. He also prayed that the Browns be ordered to assert their adverse claim of ownership in a petitory action pursuant to LSA-C.C.P. art. 3662.
In this case Smith did not assert ownership of the area in dispute, not even by reason of acquisitive prescription.
The trial judge found that the Browns were the record title owners of the disputed *1179 property, that Bedsole and his insurer were not liable for trespass because Bedsole acted on Smith's instructions in cutting the timber, that Smith was liable for trespass but did not trespass in bad faith and that Smith was not in possession of the disputed property. The trial court gave judgment in favor of the Browns and against Smith for the value of the timber cut in the amount of $1,414.83, but rejected the Browns' demands against Bedsole and his insurer. The trial court rejected Smith's reconventional demand in the possessory action against the Browns.
Smith appeals arguing that the trial court erred in not finding him to be in possession of the disputed property. The Browns appeal arguing that the trial court erred in failing to award them triple damages under LSA-R.S. 56:1478.1 on the ground that the timber was cut and removed "across ownership lines and/or marked boundary lines." The Browns do not complain or assign as error the rejection of their demands against Bedsole and his insurer. Hence, they are not involved in this appeal. We affirm the judgment against Smith in favor of the Browns.

FACTS
Based on the property descriptions contained in the instruments of record on which they base their titles, the Brown and Smith properties abut one another along a segment of the east-west boundary line between the parishes of Sabine and DeSoto. The Browns' property consists of approximately 317 acres of land situated in Section 22, Township 10 North, Range 13 West (Sec. 22, T10N, R13W) located in Sabine Parish. Smith's property consists of approximately 57 acres of land in Section 15, Township 10 North, Range 13 West (Sec. 15, T10N, R13W) located in DeSoto Parish. The trial court found the north line of Section 22, Township 10 North, Range 13 West to be the dividing line between Sabine Parish and Desoto Parish. Immediately to the north of and adjoining Section 22 is Section 15, Township 10 North, Range 13 West. The northern boundary of the Browns' property adjoins the southern boundary of Smith's property at the dividing line between Sabine Parish and DeSoto Parish.
The disputed area from which the timber was cut is rectangular in shape and consists of approximately ten acres. It is located in Section 22, Township 10 North, Range 13 West with its northern edge running along the north border of this same section. Its eastern edge runs approximately 430 feet along the west side of U.S. Highway 171. Its southern edge extends west from that point for some 900 or so feet to Bear Creek which forms the western edge of the disputed tract. Under the circumstances the area in question is south of the parish boundary line within the area described in the Browns' title.
At the southeast corner of the disputed tract, on the west side of U.S. Highway 171, there is a highway sign stating "Enter Sabine Parish." The sign is inaccurately located with reference to what is shown to be the true boundary between the two parishes and is located south of the true line. Remnants of an old fence can be found running into the woods in a westerly direction from the vicinity of the highway sign.
The Browns purchased their 317-acre tract in March, 1973. The tract consists of timber land. In 1975 they entered into a timber management contract with Boise Southern. On March 14, 1981, Fred Dahlem, a timber manager for Boise Southern, marked the north boundary of the Browns' property with blue flags. The flag line ran from east to west along the north line of Section 22, Township 10 North, Range 13 West. The north boundary of the Browns' property was previously unmarked although there is some evidence of an old fence along this line.
Smith purchased his tract in February, 1978. The Smith tract also consists of timber land. In 1981, Smith agreed to sell timber to Bedsole. Bedsole began to cut the timber in the late summer of 1981. Just before the cutting began, Smith took Bedsole's foreman down to the highway *1180 sign (which stated "Enter Sabine Parish") and told him to start cutting at that point, to go west from that point to Bear Creek, and cut everything to the north.
In September 1981, Fred Dahlem returned to the area where he had previously flagged the north boundary of the Browns' property. He noticed that timber had been cut across the blue flag line. The timber had been cut by Bedsole pursuant to his agreement with Smith. As a result of this incident the Browns filed the instant suit seeking damages for wrongful cutting of timber. As noted above Smith defended on the basis of possession and also filed the reconventional demand in which he asserted a possessory action.

NATURE OF THE ACTIONS
In approaching a resolution of this case it is first necessary to give consideration to the nature of the actions. Smith defends the Browns' trespass action through asserting that he had legal possession of the property but does not assert ownership. Likewise, this reconventional demand is merely a possessory action. The prayer of the reconventional demand is couched in traditional possessory action terms in which Smith prays that his possession be recognized and restored to him. Secondly, Smith prays that defendants in reconvention (the Browns) be ordered to assert their adverse claim of ownership of the property in dispute within a delay to be fixed by the trial court not to exceed sixty days or be precluded thereafter from asserting ownership of the property in dispute.
On appeal before this Court of Appeal the defendant and reconvener, Smith, urges that, despite the procedural posture of the case, the matter is esentially a boundary dispute. Factually, Smith pitches his case on the alleged possession for many years by himself and his ancestors in title of some ten acres admittedly outside of the property described in his title and located within the property described in the Browns' title. For reasons we will show, any alleged possession by Smith and his ancestors in title has no relevance in this case in the procedural posture presented. We have been unable to find any case in the jurisprudence presenting the precise facts of this case, and the codes and statutes do not, so far as we can determine, address the question directly.
It is our conclusion that in a controversy of the nature before us, if the Browns establish their title to the property in dispute, any alleged possession by Smith is without bearing and cannot be asserted to oppose the Browns' trespass action or to establish any rights on Smith's behalf for protection of his possession under the guise of enforcing his rights under the possessory action as one of the real actions established by our law. The Browns did establish title in themselves to the property in dispute. Therefore, the trial court was correct in finding for the Browns and we affirm that holding.
We now develop the general conclusions which we have stated above.
The action for damages for trespass brought by the Browns is not one of the real actions provided for in the Code of Civil Procedure. Ample citation for this proposition is cited in Harvey v. Havard, 287 So.2d 780 (La.1973). See also Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App. 2d Cir.1981), writ denied, 397 So.2d 804 (La.1981). The cutting of trees on land of another is denounced in our statutory law in LSA-R.S. 56:1478.1 where the cutting is done "without the consent of the owner or legal possessor." The Browns alleged themselves to be the owners of the property in dispute and they seek relief in the form of a money judgment. This is clearly an action in tort although it is backed up by the cited statute. In the introduction to the Code of Civil Procedure articles on real actions, Book VII, Title II, Real Actions, several types of actions which are not real actions, including the action of trespass, are referred to as fringe actions bearing some resemblance to real actions.
Regardless of its nature or classification, in an action of trespass such as we *1181 have here, title to the land is a pivotal issue simply because it is the foundation for the action and the plaintiff in such an action bears the burden of proving his ownership. Harvey v. Havard, supra.
In the Harvey case we find the following statement:
"In cases where the plaintiff brings a trespass action as owner for damages to his land and proves his title, it is no defense for the trespasser to show he has possessed for a year without authority from the owner."
This statement was made in the context of distinguishing a case brought by a plaintiff on the basis of possession of the land rather than on the basis of ownership. In the Harvey case the Supreme Court resolved the case in favor of the plaintiffs. The court remarked that the defendants (Dan DeLee and his contractee) had failed to prove DeLee's ownership either by title or by acquisitive prescription. The court held that the issue was title and plaintiffs made out their record title. Under the circumstances it was immaterial that DeLee had possessed for a year.
It is clear from the discussion in Harvey v. Havard, supra, that the title issue was a foundation matter, a burden of proof element, and was not considered in the context of the real actions. The court clearly stated that the action of trespass involved was not one of the real actions provided for by the Code of Civil Procedure. It said: "It is neither a petitory, nor a possessory, nor a boundary action."
Turning to Smith's defense in this case and his reconventional demand, as we have noted, Smith did not assert ownership in his pleadingshe only asserted possession. In his pleadings Smith alleges corporeal acts of possession in himself or his ancestors in title within visible boundaries for many years. The allegations fall short of alleging record title, and it is clear that Smith's record title does not include the property in dispute. It is clear that Smith does not allege ownership by reason of acquisitive prescription. He alleges that he had legal possession and his possession had been disturbed by the Browns through the bringing of the principal lawsuit and the granting of a mineral lease. In the reconventional demand the prayer is for typical relief sought through the possessory action.
Contrary to Smith's pleadings, his counsel argue on his behalf in this appeal that the legal controversy is essentially a boundary dispute. In that regard Smith presented evidence to establish possession in himself and his ancestors in title for an area beyond and outside of his record title extending to the south to an old fence line referred to as the Mahoney Fence. Counsel for Smith present as a legal issue in the case the right of Smith to tack on to his own the possession of his ancestors in title of the land in dispute.
Regardless of what the proof may show, Smith has never articulated his defense or his reconventional demand as a boundary action. He has never claimed the ownership by acquisitive prescription. We are aware of the power of courts to regard the pleadings for what they are rather than what they are denominated by the pleader. However, here we are not presented with one of those situations. In such situations, the courts look to the substance of the pleadings; and here the substance of Smith's pleadings spell out a possessory action rather than a boundary action. Therefore, Smith does not rely on title or bring into the controversy any title by acquisitive prescription or recognized boundary which he may have.
In summary, we have noted that the action for trespass for wrongful cutting of timber involves title as an issue as a matter of burden of proof. We know of no other requirements other than to show record title so long as the defendant shows no title at all. In the possessory action (a real action) the sole object is the protection of possession (LSA-C.C.P. art. 3655) and title is not an issue (LSA-C.C.P. art. 3661). In connection with these observations we should note than an action for trespass may, in fact, be founded on mere possession. *1182 See Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir.1959) distinguished in Harvey v. Havard, supra; and Garrett v. Martin Timber Co., Inc., supra. Moreover, LSA-R.S. 56:1478.1 provides that the action for wrongful cutting of timber may be brought by either the "owner or legal possessor." In a suit based on possession, title would not be involved unless the defendant made it one, and the inquiry would be confined to who had legal possession. Garrett v. Martin Timber Co., Inc., supra.

RESOLUTION OF THE PRINCIPAL ISSUE
The trial court found that plaintiffs established that they were the record title owners of the land consisting of approximately ten acres from which the timber in question was cut. We find no manifest error in this finding. Inasmuch as Smith does not claim the ownership, we conclude that the trial court was correct in granting judgment to the plaintiffs in their trespass action. If this was as far as the case went, then we think that Harvey v. Havard, supra, should be our sole guide and authority. However, Smith has brought his possessory action as a separate action, albeit through reconventional demand, as well as asserting possession as a defense. Can the possessory action brought by reconvention stand alone and subsist alongside of plaintiff's trespass action? Can the Browns be allowed to recover damages in their trespass action with the possibility that Smith, if he establishes legal possession, can be given the relief of being settled in his possession and the Browns be ordered to assert their adverse ownership within a limited time on penality of losing any claim to ownership?
Plaintiffs initiated the controversy before us by filing their suit for trespass. We conclude that by filing the reconventional demand Smith was in reality doing nothing more than bolstering his defense asserted in his answer to the principal suit to the effect that he held legal possession. We have stated that under Harvey v. Havard, supra, such a defense is not good. It would be contrary to this position if we were to allow Smith to maintain a possessory action by way of reconventional demand in the same proceeding as the tort suit for trespass. It seems to us that Smith might have met the title issue (as a foundation or burden of proof matter) by asserting that he was owner in reliance on the same, or similar, evidence as he presented at trial. Such would have put Smith in position to contest the Browns' ownership of the land and the Browns' record title would not by itself have sufficed as a foundation for their tort suit for trespass. However, except as a general denial Smith did not contest the Browns' title and only asserted possession in himself and not title. Under the peculiar circumstances of this case and its procedural posture, we are of the opinion that Smith should not prevail in his possessory action. Consequently, we hold that the trial court correctly rejected the demand of Smith in his possessory action.
In again adverting to the question of title we hasten to add, as we have previously intimated, that the matter of title considered by us goes only to the foundation for the trespass action. As a part of plaintiffs' burden of proof in a trespass action grounded on ownership we are concerned only with the prima facie showing made by the Browns in establishing that they are record title holders to which Smith has offered no opposition proof. Such proof as Smith made in trial was solely in support of his pleadings to the effect that he was the legal possessor of the land in question. We disagree with Smith's contention on appeal that this case is a boundary dispute. In that regard we express no opinion on the ultimate question of ownership as it might be determined in a boundary action or a suit to settle the title question as such based on acquisitive prescription. Likewise, we express no opinion as to the effect of our holdings in this case on any litigation which may hereafter be brought. All we hold here is that, for the purpose of the present litigation, we affirm the trial court's finding that the Browns were the record title holders.
*1183 In view of our dispositions in this case we find no need to address various other arguments made on behalf of both the Browns and Smith.

THE PLAINTIFFS' APPEAL FOR TRIPLE DAMAGES
The trial court awarded plaintiffs damages in the amount of $1,414.83. Plaintiffs appeal alleging they are entitled to triple damages under R.S. 56:1478.1(C) which provides:
"C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner."
The plaintiffs urge that we give a literal interpretation to the words of the statute referring to removal of trees across ownership lines and marked boundary lines.
The Browns urge that the timber was cut and removed across "ownership lines and/or marked boundary lines." They do not concede the defendants' "good faith" but contend triple damages are nevertheless due even if Smith was in "good faith."
We find that the courts of this State have not given a literal or restrictive interpretation to this statutory language. Smith v. Myrick, 412 So.2d 677 (La.App. 2d Cir.1982); Garrett v. Martin Timber Co., Inc., supra, and Shaffett v. Vicks, 385 So.2d 419 (La.App. 1st Cir.1980). These cases stand for the proposition that, where there is no wilful and intentional cutting and removal of trees from the plaintiff's property and the two properties are not divided by any visibly designated demarcation lines, defendants are not liable for triple damages as provided by the statute. In such cases the measure of damages is the fair market value of the timber cut. A case in factual contrast is Gewin v. Willamette Industries, Inc., 406 So.2d 730 (La. App. 3rd Cir.1981) in which this Court of Appeal approved an award of triple damages by the same district judge who ruled in the present case. In the Gewin case, which distinguished the Shaffett case, the trial court found there was a marked line dividing the properties consisting of tree blazes and differences in timber height on the two sides of the line.
In the case before us the facts relevant to the triple damages issue are as follows. Fred Dahlem, a timber manager working under contract for the Browns, testified that he marked the north boundary of the Browns' property with a line of blue flags on March 14, 1981. He said no north boundary existed prior to this flagging although he did notice some remnants of an old fence along where he flagged. Robert Haggert, Bedsole's foreman who actually cut the timber beginning in the summer of 1981, admitted seeing some flags but did not think the flags marked a boundary. He thought the flags were merely seismic flags and attached no significance to them. There was testimony indicating that finding seismic flags in the area was not unusual, since testing for minerals was common. Haggart testified he did not see any remnants of an old fence line.
We find the timber was not cut and removed across ownership lines or marked boundary lines as those terms have been judicially construed. The evidence concerning the existence of remnants of an old fence is inconclusive. Due to seismic flagging in the area, the flag line put in by Dahlem did not provide sufficient notice of a marked boundary. In addition, there was no evidence to indicate that any visible ownership lines designating a boundary existed in this area. We conclude the Browns were entitled to recover only $1,414.83, the fair market value of the trees cut and removed.

CONCLUSION
For the reasons given above we affirm the judgment of the trial court. Inasmuch *1184 as this affirmance includes a rejection of the appeal of the principal plaintiffs, the Browns, for triple damages we will assess them with a portion of the costs of this appeal. The costs of this appeal are assessed in the proportions of three-fourths to Jerry M. Smith and one-fourth to Don K. Brown and F.M. Brown.
AFFIRMED.