479 So.2d 477 (1985)
VERSAI MANAGEMENT, INC.
v.
MONTICELLO FOREST PRODUCTS CORPORATION.
No. CA 84 1005.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
*479 E.B. Dittmer, II, Bogalusa, for plaintiff-second-appellant.
Delos Johnson, Jr., and Charles Cassidy, Franklinton, for Monticello Forest Products Corp., defendant-appellee.
William J. Knight, Franklinton, for John Stringer defendant-appellee.
John Gallaspy, Bogalusa, for Lemenda Pope.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This suit commenced as one in tort by Versai Management, Inc. (Versai) alleging trespass and timber conversion by Monticello Forest Products Corporation (Monticello). Monticello answered contending it acquired title to the timber by a warranty deed and third partied the vendor therein, Johnny R. Stringer. Monticello subsequently filed a second third party demand against Lemenda R. Pope alleging she sold the timber to Stringer in a warranty deed. Stringer also third partied Pope. Versai then filed a supplemental and amending petition making Pope a party defendant and alleging she sold the timber to Stringer at a time when Versai had a valid, recorded option to purchase from her, which option *480 was subsequently exercised by Versai. Pope filed a peremptory exception pleading the objection of prescription to Versai's claim insofar as it pertained to an action in tort. After a trial, judgment was rendered in favor of Versai against Pope for $8,442.44, the stipulated value of the timber removed from the property. Versai's demand against Monticello and all third party demands were dismissed. Pope took a suspensive appeal. Versai took a devolutive appeal and answered Pope's appeal. Pope then answered Versai's appeal.

FACTS
On March 13, 1980, by authentic act, Pope granted to Versai for a period of 12 months from date "the exclusive right, privilege, or option to purchase" 11.163[1] acres of immovable property in Washington Parish, Louisiana. The consideration for the option was $500 and the purchase price of the land was fixed at $39,070.50. This instrument was recorded in the public records of Washington Parish on March 14, 1980.
On November 12, 1980, in an acknowledged written instrument, Pope purported to sell to Stringer for a consideration of $10 and other good and valuable consideration all merchantable trees on the NW¼ of the NW¼ of Section 6, Township 2 South, Range 14 East, less the North 400 feet, located in Washington Parish, Louisiana. This tract contained approximately 30 acres. The acreage on which Versai held its option is located in this tract and was not excluded from this description. This instrument granted to Stringer the right of ingress and egress over the land to cut and remove the timber for a period of 18 months. Pope covenanted to Stringer that she was "seized of an indefeasible fee simple title" to the timber, she had "good right to convey same to Buyer", the timber was "free from all encumbrance" and she would "warrant and defend the same to Buyer against the lawful claims of all persons." This instrument was recorded in the public records of Washington Parish on November 12, 1980.
Thereafter, also on November 12, 1980, in an acknowledged written instrument, Stringer purported to sell to Monticello for a consideration of $10 all merchantable trees 8 inches in diameter and larger outside bark at point of severance on the same property described in the Pope-Stringer timber sale. The terms of this instrument were identical to the terms of the Pope-Stringer instrument. This instrument was recorded in Mississippi.
By letter dated January 16, 1981, Versai advised Pope of its intent to exercise the option to purchase. On March 27, 1981, in an authentic act of sale and mortgage, the ownership of the property was transferred by Pope to Versai for the consideration agreed upon. This instrument was duly recorded in Washington Parish. At the time of the sale, the timber was still standing on the property. Neither the option nor the sale and mortgage reserved the timber for Pope.
Monticello commenced its timber cutting operations in the fall of 1981. In October or November of 1981, Oliver Meyer, the secretary-treasurer of Versai, was driving on the highway adjacent to the Versai property when he observed Monticello's workers cutting timber. Meyer called T.L. Hill of Monticello and the cutting was stopped. Monticello did not conduct a records check before buying or cutting the timber.

LEGAL EFFECT OF RECORDED POPE-VERSAI OPTION
The trial court held the option only conveyed a personal right to Versai; this personal right did not become an enforceable real right, notwithstanding recordation, until the option was exercised; Pope was the owner of the timber at the time of its sale *481 to Stringer and legally conveyed ownership of the timber to Stringer; Stringer legally conveyed the ownership of the timber to Monticello; and Monticello legally harvested the timber and, thus, committed no trespass or conversion. Versai contends the trial court committed error because a recorded option on immovable property confers a real right of which third persons are bound to take notice; this real right cannot be defeated by a sale to a third person prior to the exercise of the option; and sales made while the recorded option is viable are illegal, null and void.
The legal effect of recording an option to purchase immovable property is to give notice to third persons of the agreement and provide protection to the option holder against transactions involving third persons. An acceptance of such an option within the stipulated time is effective against third persons and relates back to the time the option was recorded. The rights of a holder of a recorded option to purchase immovable property cannot be defeated by a subsequent sale of the property to a third person; such a sale is illegal, null and void. La.C.C. art. 2462; La.R.S. 9:2721, 2722 and 2723; La.C.C. art. 2266, redesignated La.R.S. 9:2756 by Acts 1984, No. 331, § 5, effective January 1, 1985; Watson v. Bethany, 209 La. 989, 26 So.2d 12 (1946); Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931); Kinberger v. Drouet, 149 La. 986, 90 So. 367 (1922); E. Abell, Real Rights in Louisiana, 21 La.L. Rev. 462 (1961); A. Yiannopoulos, 2 Louisiana Civil Law Treatise Property § 167, pp. 455-456 (1980); S. Litvinoff, 7 Louisiana Civil Law Treatise Obligations § 108 pp. 198-200 (1975).
Standing timber is a component part of the tract of land on which it is located. La.C.C. art. 463. Pope did not reserve timber rights in the option agreement or in the sale and mortgage. La.C.C. art. 464. Therefore, the option agreement included the timber with the land. The purported timber sales by Pope and Stringer in the face of Versai's recorded option are illegal, null and void. When Versai exercised its option right to purchase, it acquired ownership of the timber.
The case of Choctaw Home Builders, Inc. v. Lena, Inc., 223 So.2d 23 (La. App. 1st Cir.1969), cited by the trial court as authority for its ruling, is factually distinguishable and legally inapplicable. In Choctaw, the plaintiffs, who were assignees of the original option holder, assumed they had complied with the terms of the option, built a residence on one of the lots subject to the option and filed suit for specific performance to compel the defendant to transfer title to the lot. The opinion does not reflect if the option was recorded, but that fact is irrelevant to the case because the rights of the option holder against third persons were not at issue. The trial court denied specific performance but awarded the construction cost of the residence to the plaintiffs. This court found the option agreement was ambiguous, ruled the trial court committed error by not allowing parol evidence to explain the ambiguity, reversed the judgment of the trial court and remanded for further proceedings. On remand, the trial court found as fact that the parol evidence showed the parties had different impressions of their rights under the agreement and the agreement was prepared by the defendant. The court ruled the ambiguities in the contract must be construed against the defendant (who prepared it) and, when the ambiguities were construed against the defendant, the plaintiffs were entitled to specific performance. On appeal, this court affirmed. Choctaw Home Builders, Inc. v. Lena, Inc., 246 So.2d 212 (La.App. 1st Cir.1971), writ refused, 258 La. 908, 248 So.2d 333 (1971). The statement in the first Choctaw case that an option holder does not have a right to compel specific performance against the option grantor until after the option is exercised is correct. However, this statement of law does not purport to delineate the rights of the option holder against third persons who attempt to acquire an interest in the property on which the option holder has a recorded option. As previously *482 indicated, a third person cannot preclude the holder of a recorded option on immovable property from acquiring ownership pursuant to the terms of the option agreement. The trial court committed error by holding otherwise.
This assignment of error has merit.

VERSAI'S CLAIM AGAINST MONTICELLO
Versai contends it was damaged "[a]s a result of the defendant's [Monticello] trespass and conversion of petitioner's property". Versai alleges Monticello "entered upon" its property "without the knowledge or consent of petitioner [Versai] and did willfully and wrongfully cut and remove standing timber ... owned by petitioner." Versai contends the trial court committed error when it dismissed Versai's claim against Monticello.
The tort of trespass is defined as the unlawful physical invasion of the property or possession of another. Dickie's Sportsman's Centers, Inc. v. Department of Transportation and Development of the State of Louisiana, 477 So.2d 744 (La. App. 1st Cir.1985); M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708 (La. App. 3rd Cir.1982). In addition, it is a tort (sometimes called timber trespass) to convert or "cut, fell, destroy or remove any trees ... growing or lying on the land of another, without the consent of the owner or legal possessor." La.R.S. 56:1478.1(A); La.C.C. art. 2315; Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951); Brown v. Bedsole, 447 So.2d 1177 (La.App. 3rd Cir.1984), writ denied, 450 So.2d 358 (La.1984).
After March 27, 1981, Versai was the owner of the 11.163 acres of land and the standing timber thereon. The evidence shows Monticello went on Versai's land and cut and removed Versai's trees without consent. Monticello's conduct in so doing was tortious (trespass and timber trespass), and Versai is entitled to recover appropriate damages from Monticello.
This assignment of error has merit.

VERSAI'S CLAIM AGAINST POPE
The trial court ruled Pope breached her option agreement with Versai when she sold the standing timber to Stringer. Pope contends the trial court committed "error in interpreting the allegations of plaintiff's supplemental petition ... as a claim for damages for breach of contract rather than as an inclusion of Mrs. Pope as an alleged joint tort feasor." The supplemental and amending petition contains the following pertinent allegations:
VI.
On November 12, 1980 Lemenda Pope purported to sell to Johnny Stringer, and Johnny Stringer to Monticello Forest Products, certain timber located on immovable property now owned by petitioner and described in paragraph II of the original petition herein.
VII.
Lemenda Pope had granted to petitioner an option to purchase said immovable property, which option was recorded on March 14, 1980 at COB 305, page 272 of the conveyance records of Washington Parish and which option to purchase was in full force and effect on November 12, 1980, the date of the timber sale from Lemenda Pope to Johnny R. Stringer and Stringer to Monticello Forest Products Corporation.
VIII.
Lemenda Pope was aware of the outstanding option in favor of petitioner at the time of the purported timber sale to Johnny R. Stringer, was therefore in bad faith in executing said timber sale and is liable to petitioner for the following damages:...
In Carter's Insurance Agency, Inc. v. Franklin, 428 So.2d 808, 815 (La.App. 1st Cir.1982) appears the following:
The "theory of the case" doctrine has been abolished in Louisiana as a pleading *483 requirement or restriction. La.C.C.P. arts. 862, 1154 and 2164. Our code of civil procedure sets forth a system of fact pleading. If the facts constituting the claim or defense are alleged or proved, a party may be granted any relief to which he is entitled under the pleadings and the evidence.
[Footnote omitted].
The Pope-Versai option agreement, Pope-Versai sale and mortgage, Pope-Stringer timber sale and Stringer-Monticello timber sale were introduced into evidence at the trial. The Pope-Versai sale and mortgage shows Pope warranted her title to the property conveyed. The facts alleged and the evidence of record clearly support a cause of action for breach of contract.
In the trial court, Pope filed a peremptory exception pleading the objection of one year liberative prescription for tort contained in La.C.C. art. 3536, which was amended and reenacted as La.C.C. art. 3492 by Acts 1983, No. 173, effective January 1, 1984. The trial court ruled Versai's petition failed to disclose a cause of action in tort against Monticello; the joining of Pope in the supplemental and amending petition on April 5, 1983, would not relate back to the date of filing suit against Monticello on April 5, 1982; and, therefore, if the allegations against Pope sounded in tort, the action was prescribed (the alleged tort was discovered in October or November of 1981). The trial court then ruled that Versai's cause of action against Pope sounded in contract and was not prescribed. Pope contends the trial court committed error by failing to apply La.C.C. art. 3536 and urged for the first time on appeal the one year liberative prescription of La. C.C. art. 3537 applicable to land and timber, which has been amended and reenacted as La.C.C. art. 3493 by Acts 1983, No. 173, effective January 1, 1984. Versai contends the trial court committed error by holding that Pope was not a joint tort-feasor with Monticello and holding that Versai's tort action against Pope had prescribed. It appears well settled that when a party has been damaged by the conduct of another arising out of a contractual relationship, he may have causes of action in contract and tort. Federal Insurance Company v. Insurance Company of North America, 262 La. 509, 263 So.2d 871 (1972). When Pope sold the standing timber to Stringer in the face of her recorded option granted to Versai, she set in motion a chain of events which resulted in Monticello committing trespass and timber trespass on Versai's land and timber. A person who causes another to do a tortious act, or assists or encourages another to commit such an act, is liable in solido in tort for the damage caused by the act. La.C.C. art. 2324. The evidence shows the unlawful Pope-Stringer and Stringer-Monticello sales induced (caused) Monticello to go on Versai's property and cut the timber. These facts establish a cause of action in tort.[2]Cf. La.C.C. art. 2479; Edmond v. Webre, 413 So.2d 306 (La.App. 3rd Cir. 1982). The filing of suit against Monticello interrupted prescription against Pope. La.C.C. art. 2097, which has been amended and reenacted as La.C.C. art. 1799 by Acts 1984, No. 331, effective January 1, 1985. This interruption was effective whether Versai's claim against Pope was in contract, or tort, or both. Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982). The peremptory exception pleading the objection of prescription is overruled.
Pope contends the trial court committed error by "[f]ailing to look to the deed ... to ascertain the legal relations and the obligation of warranty" and in "failing to recognize the limitation of warranty contained in the deed". Pope cites the following provision of the Pope-Versai sale and mortgage for the proposition that Versai is bound by the Pope-Stringer timber sale:

*484 This conveyance is made and accepted subject to any and all valid existing rights of way, easements, servitudes, surface leases, mineral leases, etc., if any, in favor of other parties, which are of record or which are apparent from a careful inspection of the land.
This provision, by its own terms, is only applicable to valid transactions. The Pope-Stringer and Stringer-Monticello timber sales cannot validly deprive Versai of the right to acquire ownership it obtained in its recorded option agreement with Pope. This provision is not applicable under the facts and law of this case.
Versai is entitled to recover from Pope.

QUANTUM
Versai sought the following damages in its pleadings:

 1. Treble damages for the
 fair market value of the
 trees taken $25,568.28
 2. Loss of aesthetic value of
 land and trees 10,000.00
 3. Cost of removing stumps
 and repairing damage to
 land 10,000.00
 4. Diminution in value of
 land 10,000.00
 __________
 TOTAL $55,568.28

The trial court declined "to award consequential damages though proof of such items was offered at the trial" because Versai "offered no proof that Mrs. Pope's breach was in bad faith." The trial court also found "Versai's appraiser exaggerated the loss sustained in the devaluation of the property" and gave no award for that element of damage. The parties stipulated the timber removed by Monticello had a fair market value of $8,442.44, and the trial court rendered judgment in favor of Versai and against Pope for that amount.
Versai contends the trial court "erred in failing to award sufficient damages to Versai". Specifically, Versai contends it will cost $11,500 to recondition its land by removing stumps, filling holes and clearing debris. Even after this is done, the land without the trees will only be worth $2,500 per acre, a reduction of $1,000 per acre less than its purchase price, or a loss of value of $11,163. Thus, Versai claims in this appeal it is entitled to an additional $22,663.[3]
Pope contends the damage award is excessive. Specifically, Pope asserts the total value of timber taken from the 30 acre tract (of which Versai's land was a part) on which Monticello conducted its operations was $11,348.96, that the timber grew uniformly on the whole tract and that no more than one-third, or $3,782.98, could have come from Versai's property.
A person injured by trespass or fault of another is entitled to full indemnification for the damages caused. Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all of the facts and circumstances. Damages are recoverable even though the tort-feasor acts in good faith. Rougeau v. Moody, 396 So.2d 987 (La.App. 3rd Cir.1981); Wendorf v. Corley, 394 So.2d 1252 (La.App. 3rd Cir.1980); Bentley v. Industrial Fire Protection Company, 338 So.2d 1177 (La.App. 2nd Cir.1976). The cost of removing stumps and clearing the land after a trespass and timber trespass is a recoverable element of damage. Morgan v. Fuller, 441 So.2d 290 (La.App. 2nd Cir.1983), writs denied, 443 So.2d 596, 599 (La.1983); Thibodeaux v. Western World Insurance Company, 391 So.2d 24 (La.App. 3rd Cir.1980).
In addition, the legislature has statutorily standardized the damages due for timber trespass in La.R.S. 56:1478.1(B) and (C) as the fair market value of the trees cut. Those who willfully, intentionally and unlawfully cut, fell, destroy or remove trees across ownership lines, marked boundary lines or outside designated cutting *485 area lines, even if acting in good faith, are liable to the owner or possessor of the trees for three times the fair market value of the trees, unless the cutting operations are within an area covered by a contract with the owner. Although this statute standardizes the award for the value of the trees taken, it does not eliminate recovery for other elements of damage suffered by the owner of the immovable as a result of trespass. Howes v. Rocquin, 457 So.2d 1220 (La.App. 1st Cir.1984); Thibodeaux, 391 So.2d at 27.
James Stevenson was qualified at the trial as an expert appraiser and testified he acted as agent for Versai in locating the property. Versai wanted the property to build an architecturally designed mobile home village. Prior to the timber operations, the property was worth $3,500 per acre and its highest and best use was for income producing businesses. Trees add to the value and marketability of land and it is harder to sell a piece of land with no trees on it. After Monticello cut the trees from the land, it was only worth $2,000 per acre and, thus, lost $16,745 in value. The highest and best use of the land after the timber cutting was for pasture, but, first, the land had to be destumped, cleared and filled. Stevenson set his expert witness fee at $900.
William R. Thornhill was qualified as an expert in bulldozing, land clearing, hauling fill dirt and excavation. He inspected the Versai property after it was cut by Monticello. In his opinion, the cost of properly clearing the land was $11,500. He fixed his expert witness fee at $100.
Oliver Meyer, Versai's secretary-treasurer, testified Versai had an architect survey the land to build a mobile home park to be available for the employees of a prison being constructed in the area. The project was put on hold for financial reasons.
T.L. Hill, an employee of Monticello, testified Monticello received the following revenues for their timber operations on the 30 acre tract which was cut:

 1. Pine saw timber 46,462
 feet @ $170 per 1000
 feet $ 7,898.54
 2. Hardwood timber 3.93
 cords @ $4 per cord 15.72
 3. Pine tree length chips
 171.94 cords @ $19 per
 cord 3,266.86
 4. Pine pulpwood 20.98 cords
 @ $8 per cord 167.84
 __________
 TOTAL $11,348.96

Richmond McGee testified he was a forester for Monticello, he cruised the 30 acre tract and the timber was uniform across the tract.
The trial court committed error when it denied Versai's claims for land clearing costs. The law and the testimony of Thornhill support such an award. The good or bad faith of a trespasser is not relevant to granting such an award. Accordingly, Versai is awarded $11,500 for land clearing costs.
After hearing their testimony and viewing their demeanor, the trial court rejected Hill and McGee's evidence on the fair market value of the trees taken and accepted the joint stipulation on this element of damage. After reviewing all pertinent evidence, we cannot say this ruling is clearly wrong.
The trial judge rejected the testimony of Stevenson on diminution of property value as exaggerated. Certainly, any claim in per acre diminution of value ($1500) would have to be offset by the per acre value of the trees taken ($756.29); Versai could not collect both. Further, the cost per acre of clearing the property ($1,030.18), if awarded, must also be credited against a diminution award because the clearing increases the value. In any event, we cannot say that the trial judge was clearly wrong in rejecting the diminution testimony.
Accordingly, judgment will be rendered herein in favor of Versai against Pope and Monticello for $19,942.44.

THIRD PARTY DEMANDS OF MONTICELLO AND STRINGER
Because we have reversed the trial court judgment dismissing Monticello as a party *486 defendant, the third party demands of Monticello and Stringer are now at issue (even though they did not appeal or answer the appeal). Cane River Shopping Center v. Monsour, 443 So.2d 602 (La.App. 3rd Cir. 1983), writ denied, 444 So.2d 1213 (La. 1983); Robertson v. Parish of East Baton Rouge, 415 So.2d 365 (La.App. 1st Cir. 1982).
As previously indicated, the Pope-Stringer and Stringer-Monticello timber sales warranted good title. Because Stringer and Monticello have been evicted from that which they purportedly bought, their rights against their respective sellers are controlled by La.C.C. art. 2506. Morgan v. Fuller, 441 So.2d at 298; Leon McQueen Lumber Company, Inc. v. Baer, 391 So.2d 1198 (La.App. 1st Cir.1980), writ denied, 396 So.2d 882 (La.1980), reconsideration denied, 396 So.2d 927 (La.1980). La.C.C. art. 2506 provides as follows:
When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:
1. The restitution of the price.
2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.
3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
4. The damages, when he has suffered any, besides the price that he has paid.
Thus, Monticello is entitled to recover from Stringer, and Stringer from Pope, the purchase price of $10,[4] all damages and all costs. Judgment will be rendered accordingly.

COSTS
The trial court cast Versai for the cost of its claim against Monticello, assessed Stevenson's expert witness fee to Versai and divided the remaining costs equally between Versai and Pope. Versai contends the trial court abused its discretion by assessing costs in this manner.
Although a trial judge has great discretion in assessing costs, the general rule is that the party cast shall pay all costs of a suit. This rule is rooted in the principle that the party whose behavior unjustifiably causes costs to be incurred ought to pay them, unless some circumstance renders an alternative assessment equitable. La.C.C.P. art. 1920; Muller Electric Corporation v. E.I. Dupont De Nemours & Co., Inc., 450 So.2d 746 (La. App. 5th Cir.1984); Bonfanti Marine, Inc. v. State, Through Division of Administration, 444 So.2d 218 (La.App. 1st Cir.1983). Because Versai has prevailed, Pope and Monticello should be cast for all costs, subject to the rights of Monticello and Stringer on their third party demands.
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgments of the trial court dismissing Monticello as a party defendant and rejecting Versai's claim for the cost of clearing its land are reversed. Judgment is rendered in favor of Versai against Pope and Monticello jointly, severally and in solido for $19,942.44, with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings, including the cost of this appeal. Judgment is rendered in favor of Monticello on its third party demand against Stringer for $10 and all sums for which it is cast. Judgment is rendered in favor of Stringer on his third party demand against Pope for $10 and all sums for which he is cast.
REVERSED AND RENDERED IN PART;
AFFIRMED IN PART.
NOTES
[1] In his reasons for judgment, the trial judge states Versai's tract of land contains "approximately ten and a quarter acres". Versai assigns this as error. The Pope-Versai option and sale each refer to two parcels of land: the first contains 10.243 acres and the second contains 0.92 acres, for a total of 11.163 acres.
[2] In the instant case, the breach of contract induced a tort. This factual situation is distinguishable from the situation where a person induces a breach of contract. D'Antoni v. D'Antoni, 432 So.2d 926 (La.App. 4th Cir.1983); Moss v. Guarisco, 409 So.2d 323 (La.App. 1st Cir. 1981).
[3] Versai does not assign as error in this appeal the rulings which held Pope's breach of contract was not in bad faith and denied treble damages under La.R.S. 56:1478.1(B) and (C). Rule 1-3, Uniform Rules-Courts of Appeal.
[4] The Pope-Stringer sale indicated it was for $10 and other good and valuable consideration. There is no evidence in the record to show what was the other good and valuable consideration.