# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-703


**SICILY ISLAND HOLDINGS, LLC, ET AL.**

**VERSUS**

**UNITED STATES AVIATION**

**UNDERWRITERS INC., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 28,160
HONORABLE KATHY JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Candyce G. Perret, Judges.


**AFFIRMED IN PART, REVERSED IN PART,**
**AND REMANDED.**

**Perret, Candyce, J. concurs with reasons.**

**Darrell K. Cherry**
**Deutsch, Kerrigan & Stiles**
**755 Magazine Street**
**New Orleans, LA 70130**
**(504) 593-0614**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Goodman Flying Services**

**John Michael Veron**
**Veron, Bice, Palermo & Wilson**
**P.O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**R.M. Taliaferro Estate**
**C&K Farms I, LLC**

**Virgil Russell Purvis, Jr.**
**Smith, Taliaferro & Purvis**
**P.O. Box 298**
**Jonesville, LA 71343**
**(318) 339-8526**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**R.M. Taliaferro Estate**
**C&K Farms I, LLC**

**Andrew A. Lemmon**
**Lemmon Law Firm**
**P.O. Box 904**
**Hahnville, LA 70057**
**985-783-6789**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Andrew J. Harrison, Jr.**
**Wetlands Mitigation Strategies, LLC**
**Sicily Island Holdings, LLC**

**Andrew J. Harrison, Jr.**
**Madeline Melanson**
**Harrison Law, LLC**
**One American Place**
**301 Main Street, Suite 820**
**Baton Rouge, LA 70801**
**(225) 388-0065**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Andrew J. Harrison, Jr.**
**Wetlands Mitigation Strategies, LLC**
**Sicily Island Holdings, LLC**

**W. David Hammett**
**Davenport, Files & Kelly, L.L.P.**
**1509 Lamy Lane**
**P.O. Drawer 4787**
**Monroe, LA 71211-4787**
**(318) 387-6453**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **United States Aviation Underwriters Inc.**
 **United States Aviation Insurance Group**
 **Bear Flying Service, Inc.**
 **Leslie Glenn Kenney**

**S. Aaron Siebeneicher**
**Johnson, Siebeneicher & Ingram, Inc.**
**P.O. Box 7598**
**Alexandria, LA 71306**
**(318) 484-3911**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **L&L Delta Farms, LLC**

**SAUNDERS, Judge.**

In this case, we must decide whether the trial court properly granted a summary judgment: (1) limiting Plaintiffs-Appellants' property damage to an amount that does not exceed the change in value of the property from before to after the alleged damage occurred; (2) dismissing Plaintiffs-Appellants' claim for treble damages and attorney's fees; and (3) dismissing Plaintiffs-Appellants' claims for trespass.

## FACTS AND PROCEDURAL HISTORY:

Sicily Island Holdings, LLC ("Sicily Island"), Wetlands Mitigation Strategies, LLC ("WMS") and Andrew J. Harrison, Jr. (collectively, "Plaintiffs-Appellants") own and manage 201 acres of property in Catahoula Parish, Louisiana, that has allegedly been damaged by unlawful spraying of herbicides by Bear Flying Services, Inc. ("BFS") and its pilot, Leslie Glenn Kenny, both of whom are insured by US Aviation Insurance Group ("USAIG") and US Aviation Underwriters (collectively "Defendants-Appellees"). This property, and the surrounding fields, were previously farmed by the Evanses family. The Evans have continued to farm the surrounding fields since Plaintiffs-Appellants purchased this tract of land. The farming practices include chemical applications by ground equipment and by airplane on the crops surrounding Plaintiffs-Appellants' property.

In 2009, Plaintiffs-Appellants entered into a binding Mitigation Banking Instrument ("MBI") contract with the U.S. Army Corps of Engineers ("Corps"), the U.S. Environmental Protection Agency ("EPA"), the U.S. Fish & Wildlife Service ("FWS"), and the Louisiana Department of Wildlife & Fisheries ("LDWF"). That contract requires Plaintiffs-Appellants to reestablish a bottomland hardwood forested wetland and stream riparian zone, the Sicily Island Mitigation Bank

("Mitigation Bank"), on approximately 154 acres of degraded open fields (the "property").

The goal of this wetland restoration project is to "restore and enhance the wetland quality, function, and value, provide species diversity, and increase the wildlife corridor" along two bayous in the lower Ouchita and Tensas River Basins. The restoration project serves to "restore the once bottomland hardwood forested wetland habitat historically present within the site" and includes the planting of approximately 53,000 seedlings. Once the forest is reestablished, the Mitigation Bank provides "critical refining functions that are vital to the river . . . including water control and purification, groundwater recharge, soil enrichment, erosion control, and support for wildlife and downstream fishing industries." The project provides habitat for countless wildlife species, including threatened and endangered species.

Pursuant to the MBI, Sicily Island established an escrow fund containing significant financial resources to ensure the success of the restoration project and to "preserve the Mitigation Site as [a] wetland and wildlife habitat in perpetuity." Mr. Harrison recorded a Conservation Servitude that, "[e]xcept as provided in the Mitigation Banking Instrument," required Sicily Island to take no action or allow any action that would diminish the property's natural state. In addition to complying with the Mitigation Bank Restoration Plan ("MBRP") and meeting distinct performance standards, the MBI requires Sicily Island to "replant all dead seedlings." The MBI also envisions the potential for necessary "Corrective Actions," such as, replanting, through the implementation of Adaptive Management Plans. As the reforestation proceeds, the Corps releases specified numbers of "credits" to Sicily Island for sale to developers, governmental entities, and others who use them to

offset the adverse environmental impact of developments and infrastructure projects, such as, bridges, roads, electric transmission lines and pipelines.

After the first year of growth at Sicily Island, consulting foresters expressed that the Sicily Island Mitigation Bank had achieved as close to 100% survival as they had ever seen. However, during 2013, 2014, 2015, 2016 and 2017, Defendants-Appellees allegedly conducted on the adjacent Evans Farm a pattern of unlawful applications of herbicides, including gramazone (paraquat), glyphosate (Roundup), and 2,4-D that allegedly drifted onto the Sicily Island Mitigation Bank, which suffered damages as a result. During discovery, BFS and the pilot admitted they applied herbicides to the Sicily Island Mitigation Bank in August 2013 and August 2014, but denied applying herbicides to the property during 2015, 2016, and 2017, notwithstanding new and significant herbicide damage allegedly observed by Sicily Island's experts during each of those years. The herbicide applications allegedly resulted in the suppression of growth, including permanent suppression and mortality of many trees.

Following the alleged initial unlawful application of paraquat in 2013, and as required by the MBI, Plaintiffs-Appellants contacted Defendants-Appellees to ask that they not spray the Sicily Island Mitigation Bank again and for assurance that it would not occur again. Both agreed. When they failed to comply, Plaintiffs-Appellants sent certified mail letters to Defendants-Appellees on October 20, 2014, and on April 28, 2015, advising that the pesticide applications were killing or adversely suppressing growth of trees in the Sicily Island Mitigation Bank and asking Defendants-Appellees to refrain from the alleged illegal spraying by the crop duster. Plaintiffs-Appellants also made written demand upon Defendants-Appellees under the Timber Trespass Statute for damages associated with Defendants-Appellees' alleged destruction of trees in the Sicily Island Mitigation Bank.

When the unlawful herbicide applications allegedly continued despite Mr. Harrison's pleas, Plaintiffs-Appellants initiated the present litigation. Sicily Island seeks to protect the property by preventing unlawful applications to the Sicily Island Mitigation Bank and by seeking monetary damages to cover the expenses associated with replacing dead trees and trees whose growth was suppressed by BFS's alleged unlawful herbicide applications. BFS answered the Petition with a general denial and made a jury demand.

In preparation of litigation, Sicily Island engaged Dr. Andrew Ezell, an expert forester with more than thirty-five years of experience in observing and identifying impacts of herbicides on trees. He observed widespread impacts on the Sicily Island Mitigation Bank.

On or about May 15, 2017, Defendants-Appellees filed Motions for Partial Summary Judgments on virtually every claim and item of damage. They alleged and argued facts counter to the allegations in the Petitions, the deposition testimony of Plaintiffs-Appellants and other witnesses. They also argued their interpretation of the MBI and Conservation Servitude.

After a hearing on August 17, 2017, the trial court granted partial summary judgment on some issues and denied partial summary judgment on other issues. Specifically, the trial court denied summary judgment with regard to Plaintiffs-Appellants' nuisance claims, claims for future loss of mitigation credits, and claims for mental anguish damage. The trial court granted partial summary judgment and dismissed Plaintiffs-Appellants' claims for the following: past loss of mitigation credits, replacement or replanting of trees, lost timber value and/or treble damages, trespass and/or bad faith possession damages, aesthetic and/or stigma damages, unjust enrichment damages, remediation and restoration damages, environmental assessment damages, and replacement mitigation damages. Also partial summary

4

judgment was granted dismissing Plaintiffs-Appellants' negligence per se claims, claims for attorney's fees and claim for injunctive relief. Additionally, partial summary judgment was granted limiting Plaintiffs-Appellants' property damage claims to an amount that does not exceed the change in the value of property from before to after the alleged damage occurred.

Notably, Plaintiffs-Appellants' "Assignments of Error" and "Issues Presented" only refer to the trial court's rulings on: (1) limitation of damages pursuant to the *Roman Catholic Church* line of cases; (2) damages under the Timber Trespass Statute; and (3) trespass damages. Although Plaintiff-Appellants' arguments intertwine remediation damages, restoration damages, environmental damages, and replacement mitigation damages – these are not designated or assigned for appeal. As such, we will not consider the unassigned damage theories dismissed on summary judgment.

At the August 17, 2017 hearing, the trial court held that the *Roman Catholic* test limited Plaintiffs-Appellants' possible damages at trial to the change in value of the property from before to after the damage occurred because it concluded, based on its weighing the evidence, that there were no reasons personal to Mr. Harrison to justify restoration. It also interpreted disputed provisions regarding Sicily Island's obligations under the MBI and Conservation Servitude. Despite factual considerations concerning the understanding and intent of the parties to the MBI, the trial court found that Sicily Island cannot restore the property nor replant the damaged areas without the Corps' permission, and then extended that conclusion to rule that Plaintiffs-Appellants are not entitled to damages for restoration.

The trial court also dismissed Sicily Island's claims for BFS's "destroying trees" under Louisiana's Timber Trespass Statute, finding that its interpretation of the MBI and Conservation Servitude precludes replanting of trees and timber harvest

5

on the property. The trial court also dismissed Sicily Island's trespass claims, holding no damages are available due to the existence of the MBI.

Subsequent to rendering of summary judgments, Sicily Island filed a Motion to Certify Judgments as final and appealable on September 20, 2017, and thereafter filed an application for supervisory writ with this Court on August 9, 2018. This honorable court denied the supervisory writ application but remanded for a determination of finality under La.Code Civ.P. art. 1915(B).

When the trial court refused to certify the judgment as final and appealable, Sicily Island filed a second application for supervisory writ. This honorable court granted the writ, reversed the trial court's denial of the motion for certification, entered judgment certifying the July 12, 2018 partial summary judgments as final and immediately appealable and remanded for the filing of motion for appeal.

On July 30, 2019, Sicily Island filed a Motion for Suspensive Appeal, which was granted on July 31, 2019. It is from the July 12, 2018 judgment that Plaintiffs-Appellants appeal three of the fifteen partial summary judgment rulings of the trial court, alleging the following three assignments of error:

### ASSIGNMENTS OF ERROR

1. Despite genuine issues of material fact, the District Court erred by granting partial summary judgments on factual questions in the *Roman Catholic Church analysis.*

    a. The District Court ignored Mr. Harrison's professional history, his testimony, and his attestations, all of which show long-standing dedication to restoration of forested wetlands. Instead, it found as a factual matter that Mr. Harrison had no reasons personal to restore the property.

    b. The District Court erred by interpreting the MBI, the controlling document *requiring* restoration, and the Conservation Servitude to preclude planting of trees and thus, restoration, of the damages.

2. In direct contradiction of the Timber Management Provisions of the MBI, the District Court erred by holding the MBI and Conservation

Servitude precluded any future timber harvest and, therefore, Sicily Island could not recover damages or attorney's fees for BFS[s] destruction of trees under the Timber Trespass Statute.

3. The District Court also erred by holding that the MBI, the document that requires restoration and corrective actions precludes damages for trespass.

## ASSIGNMENT OF ERROR NUMBER ONE:

Plaintiff-Appellants' first assignment of error contends that the trial court erred in making factual findings that: (1) the *Roman Catholic* test limited Appellants' possible damages at trial to the change in value of the property from before to after the damage occurred because it concluded based on its weighing of the evidence that there were no reasons personal to Mr. Harrison to justify restoration; and (2) by interpreting the disputed provisions regarding Sicily Island's obligations under the MBI and Conservation Servitude to rule that Plaintiffs-Appellants are not entitled to damages for restoration. We agree.

"[T]he trial court's determination in a motion for summary judgment is reviewed de novo. Accordingly, the appellate court uses the same criteria as the trial court in determining whether summary judgment is appropriate[.]" *Berthiaume v. Gros*, 15-116, p. 3 (La.App. 3 Cir. 6/3/15), 165 So.3d 1275, 1277 (internal citations omitted).

Louisiana Code of Civil Procedure Article 966(A)(3) provides: "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the

7

court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

> A fact is considered "material" when its existence or nonexistence might be essential to a plaintiff's cause of action under his or her applicable theory of recovery. Thus, a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. "A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate."

*Berthiaume*, 165 So.3d at 1277 (internal citations omitted).

At issue herein is whether the Plaintiffs-Appellants produced factual support sufficient to establish the existence of a genuine issue of material fact that Defendants-Appellees are not entitled to judgment as a matter of law that there are no reasons personal to Plaintiffs-Appellants to restore the property to its original condition, and that the MBI and Conservation Servitude precludes damages for restoration.

Louisiana Civil Code Article 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The overarching, guiding principle of property damage compensation, as expressed in *Roman Catholic Church v. Louisiana Gas. Service Co.,* 618 So.2d 874 (La. 1993), is that the owner be put in the same position he was in before the damage.

The Louisiana Supreme Court in *Roman Catholic* explained that Louisiana law disfavors "mechanical rules" in the assessment of property damage but embraces the rule that every property damage case "must rest on its own facts and circumstances." *Id.* at 877. Accordingly, the Supreme Court set forth the *Roman Catholic* test as follows:

8

> [W]hen a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, **or, at his election**, the difference between the value of the property before and after the harm. **If**, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, **unless** [1] there is a **reason personal** to the owner for restoring the original condition or [2] there is a **reason to believe** that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm.

*Roman Catholic*, 618 So.2d at 879-80 (emphasis added).

Interpretation of a contract involves factual determinations concerning the understanding and intent of the parties and will also involve credibility issues. La.Civ.Code art. 2045; *see also Prejean v. Guillory*, 10-0740 (La. 07/02/10), 38 So.3d 274, 279; *Bares v. Stone Oil Corp.*, 510 So.2d 102, 106 (La.App. 3 Cir. 1987).

In the instant matter, the record establishes that in 2008, Plaintiffs-Appellants purchased approximately 150 acres in Catahoula Parish. At the time, the property was an open field with no trees. In 2009, Plaintiffs-Appellants planted trees on the property and entered it into the federal Wetland Mitigation Program. In 2009, Plaintiffs-Appellants filed a "Conservation Servitude" into the Catahoula Parish records, voluntarily placing permanent restrictions on the property as follows:

> GRANTOR [plaintiff] will take no action or allow any action which diminishes the PROPERTY'S natural state or convert it to another use, which includes, but is not limited to construction of any structure or structures on said PROPERTY; the cutting, burning, removal or destruction of vegetation (including trees) on said PROPERTY; the placing of any material or objects on said PROPERTY; the building of roads, trails or paths on said PROPERTY; changing the elevation or contours of said PROPERTY, in any way pumping, draining, or causing said PROPERTY to be drained; the grazing of animals on said PROPERTY; allowing commercial, industrial or agricultural activities on said PROPERTY; or any other activity inconsistent with preserving said PROPERTY'S natural state, flora, fauna and/or wetland character, except as reserved below and as authorized by the Corps.

Plaintiffs-Appellants contend that Defendants-Appellees' unlawful herbicide application to adjacent property drifted onto their property causing damage to their

property that resulted in the destruction of trees and/or suppression of growth of trees; that there are reasons personal to Plaintiffs-Appellants to restore the property to its original condition; and that pursuant to the Conservation Servitude, Sicily Island is contractually required to conduct corrective and/or remedial actions (repair/restoration) when the mitigation bank is injured. Plaintiffs-Appellants assert that pursuant to the *Roman Catholic* test, whether they have reasons personal to restore the property and whether they will, in fact, restore the property are questions of fact. The factual evidence to demonstrate either of the *Roman Catholic* exceptions is material because the exceptions provide the basis for an award of restoration costs that exceed the diminution in value of the property. Plaintiffs-Appellants argue that whether Sicily Island is contractually required to conduct corrective and/or remedial actions (repair/restoration) when the Sicily Island Mitigation Bank is injured is also a question of fact. Plaintiffs-Appellants maintain that Mr. Harrison's testimony provides factual support sufficient to establish the existence of a genuine issue of material fact as to whether there are personal reasons for Plaintiffs-Appellants to restore the property to its original condition and/or whether Sicily Island is contractually required to make the repairs to the property. In their brief, Plaintiffs-Appellants summarized Mr. Harrison's testimony as follows (footnotes omitted):

1.  Mr. Harrison has a strong, longstanding interest and dedication to the conservation of wildlife and bottomland hardwoods. Since 1996, he has been involved in the development and management of wetland mitigation banks. However, it was not until 2009 that he had adequate financial resources to establish a mitigation bank that he personally owns, i.e., the Sicily Island Mitigation Bank.

2.  Mr. Harrison makes the two-and-a-half hour drive to the property, as much as every two weeks, to inspect the property, to observe the gradual conversion of the property back to its natural state, to conduct maintenance within the Mitigation Bank, to enjoy being outdoors, to escape the city life of Baton Rouge, and to hunt during the season. He also brings his family to the property for outdoor recreational activities, such as, hunting, wildlife watching, and ATV riding. He intends to place the property in

10

trust for his parent's descendants, thus ensuring the property is managed and preserved for future generations.

3. Sicily Island Holdings is contractually obligated to the Corps, EPA, FWS, and LDWF to reestablish a bottomland hardwood forested wetland and are committed to its long-term maintenance and protection in perpetuity. To guarantee compliance with the MBI, Sicily Island provided financial assurances and obligated themselves to financially maintain the Mitigation Bank. Thus, Sicily Island has committed that "money awarded for restoration of damages be spent on restoration."

4. Sicily Island hired forestry consultants Headwaters, Inc. [,] and its Vice President [,] Clay Cromwell [,] to assist in the development, monitoring, management and compliance of the Mitigation Bank. Mr. Harrison has also invested in expensive equipment to personally maintain the property.

5. Though Mr. Cromwell reported near 100% survival had been attained initially, BFS has since caused significant, adverse impacts to the Mitigation Banks' trees, such as, the suppression of growth and mortality, by their applications of herbicides to the Property in 2013, 2014, 2015, 2016, and 2017. These applications of herbicides continued to impact Sicily Island's property and, consequently, has prevented Sicily Island from replanting dead and damaged trees.

6. The Corps has already directed Sicily Island Holdings to develop an Adaptive Management Plan to address damages located in one of the most impacted areas. Costs of these corrective actions are expected to be significant.

7. Any money awarded for restoration of damages will be spent on restoration.

Our view of the record leads us to the conclusion that genuine issues of material fact exist as to whether there are reasons personal to Plaintiffs-Appellants to restore the property to its original condition, and whether Plaintiffs-Appellants will, in fact, make the repairs. The record contains evidence that could weigh in favor of a damage award disproportionate to or in excess of what the land is worth. The record contains no evidence that the contractual restrictions placed on the property prohibits the activities for which future restoration expenses are claimed. The issue of whether damages are exorbitant or economically wasteful is a question

11

of fact. Therefore, it is for the jury to determine. Even then, if Plaintiffs-Appellants have reasons personal or it is likely the repair/restoration will take place, then the proper measure of damages is the cost of repair/restoration. Each is a question of fact, reserved for the jury. As such, it was error for the trial court to weigh the evidence presented in connection with a summary judgment ruling. Accordingly, we reverse the trial court's ruling on this issue and remand the matter for further proceedings.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In their second assignment of error, Plaintiffs-Appellants contend that the trial court erred by holding that the MBI and Conservation Servitude preclude any future timber harvest and, therefore, Sicily Island could not recover damages or attorney's fees for BFS's destruction of trees under the Timber Trespass Statute. We find no merit to this assignment of error.

Louisiana Revised Statutes 3:4278.1, which is commonly referred to as the "Timber Trespass Statute," provides, in pertinent part:

> A. (1) It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees . . . growing or lying on the land of another, without the consent of . . . the owner . . . or in accordance with specific terms of a legal contract or agreement.
>
> . . . .
>
> B. Whoever willfully and intentionally violates the provisions of Subsection A of this Section shall be liable to the owner . . . of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney fees and costs.

In the concurring opinion of *Hornsby v. Bayou Jack Logging*, 04-1297 (La. 5/6/05), 902 So.2d 361, 371-372 (emphasis added), our Louisiana Supreme Court noted:

> [C]onsidering the placement of LSA–R.S. 3:4278.1 within the revised statutes, the statute was primarily designed to protect those with

interests in trees from loggers who entered upon property to harvest timber unlawfully. **The focus of LSA–R.S. 3:4278.1 is on trees as timber**, not the increase in value trees provide to real estate upon which they are located. Thus, recovery under the statute is **limited to the fair market value of the tree as timber**—not damages otherwise ordinarily associated with Article 2315 such as restoration value, mental anguish, or diminution in value of the real estate . . . plus potentially treble damages, plus attorney fees.

At issue herein is whether there is a genuine issue of material fact as to Plaintiffs-Appellants' entitlement to damages under the Timber Trespass Statute.

Plaintiffs-Appellants contend that Defendants-Appellees' unlawful herbicide application damaged and/or destroyed Sicily Island's trees and that such destruction occurred without Sicily Island's consent; the Conservation Servitude and MBI contract controlling the property "requires" timber harvest or thinning for ecological improvement; and that replanting or supplemental planting may be required for ecological improvement due to the damage caused by Defendants-Appellees' unlawful herbicide application. Plaintiffs-Appellants maintain that whether BFS's actions destroyed Sicily Island's trees, whether the Timber Trespass Statute is applicable to only certain types of trees, whether BFS and Mr. Kenney acted willfully and intentionally, and whether the USAIG group should have been aware that Sicily Island did not consent to the applications are questions of fact reserved for the jury.

Defendants-Appellees counter that the MBI states: "Timber harvests/thinning will only be approved if the Interagency Review Team ("IRT") determines that such activities are needed to maintain or enhance the ecological value of the site." Thus, not only are Plaintiffs-Appellants not "required" to harvest timber, but prior to doing so they must first obtain permission from the IRT. Defendants-Appellees argue that Plaintiffs-Appellants have not sought permission from the IRT to harvest timber.

We find that the record supports Defendants-Appellees' argument that Plaintiffs-Appellants are not entitled to damages under the Timber Trespass Statute, albeit for different reasons from those expressed by the parties. The Timber Trespass Statute's focus is on trees as "timber." Fundamentally, the imposition of treble damages pursuant to the timber piracy statute is warranted only when trees are diverted for sale or use. Plaintiffs-Appellants did not assert, allege, or argue that the trees were cut, felled, destroyed, removed, or diverted for sale or use. As such, the damages available under Timber Trespass Statute do not apply to Plaintiffs-Appellants' property. Accordingly, we affirm the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In their third assignment of error, Plaintiffs-Appellants argue that the trial court erred by holding that the MBI, the document that requires restoration and corrective actions, precludes damages for trespass. We find merit to this assignment of error.

"Trespass is defined as an unlawful physical invasion of the property or possession of another person." *Davis v. Culpepper*, 34,736, p. 10 (La.App. 2 Cir. 7/11/01), 794 So.2d 68, 75 *writ denied*, 01-2573 (La. 12/14/01), 804 So.2d 646. In *Wendorf v. Corley*, 394 So.2d 1252, 1254 (La.App. 3 Cir. 1980), this court explained: "It is well settled in Louisiana that damages should be awarded for illegal trespass on one's property, even when committed in good faith and though proof of the amount of the damages actually sustained by the proprietor be uncertain." Furthermore, in *Richard v. Richard*, 09-539, p. 6 (La. App. 3 Cir. 11/04/09), 24 So.3d 292, 297, this Court held that "[a] defendant may be held liable for trespass even in the absence of intent − i.e., when the plaintiff offers proof that the defendant was at fault in causing the trespass pursuant to the general tort article, La. C.C. art.

14

2315." In *Terral v. Poole*, 484 So.2d 227 (La.App. 3 Cir. 1986), this court held that debris pushed onto the plaintiff's property constituted a trespass.

At issue herein is whether Plaintiffs-Appellants produced factual support sufficient to establish a genuine issue of material fact as to whether the MBI provides damages for trespass.

Pursuant to the MBI, Plaintiffs-Appellants, as sponsor of the Sicily Island Mitigation Bank, are contractually obligated to the IRT to meet distinct performance standards to restore, maintain, and *protect* the property "within specified periods, of 1, 3, 5, and 10 years." More specifically, the restoration/enhancement plan obligates Plaintiffs-Appellants to reestablish a certain number of ultimately mature and vigorous trees of a specified species on a per acre basis to "achieve a final coverage at year 5 of 200-300 stems/acre, 85% canopy coverage at maturity." In addition, the plan obligates Plaintiffs-Appellants to "replant all dead seedlings with new seedlings of the appropriate species."

Plaintiffs-Appellants assert that Defendants-Appellees' application of herbicides, either directly or by drift, constitutes a trespass for which Defendants-Appellees are liable for damages. Plaintiffs-Appellants maintain that these continuous and repeated, uncontrolled releases of poisonous and toxic chemicals, to which they did not consent, damaged trees and vegetation and/or retarded the growth of surviving trees and vegetation. Plaintiffs-Appellants argue that due to Defendants-Appellees acts or omissions, the Sicily Island Mitigation Bank is not in compliance with the 85% canopy closure or the hard mast to soft mast ratio requirements. Furthermore, Defendants-Appellees' act or omissions has interfered with Plaintiffs-Appellants' harvesting of trees for sale or use in the future.

Defendants-Appellees counter that pursuant to the Conservation Servitude attached to the MBI, Plaintiffs-Appellants are prohibited from the "cutting, burning,

15

removal or destruction of vegetation (including trees) on the property." Thus, Plaintiffs-Appellants have suffered no damages to which Defendants-Appellees are liable.

Our review of the record shows that through the discovery process, Bear Flying and Kenny admitted "that a small amount of chemicals drifted onto the edge of plaintiff's property during the applications on August 29, 2013 and August 21, 2014." Plaintiffs-Appellants expert, Dr. Andrew Ezell's Affidavit states: "During my visits of 2014, 2015, and 2016, I observed symptomology considered to be recent herbicide impact on planted hardwoods." It further states: "If herbicide applications continue to occur and cause similar impacts to those observed in 2014, 2015, and 2016, it is probable that additional planted hardwoods will suffer irreparable damage, die, or have suspended growth." Mr. Harrison testified that pursuant to the MBI, he is obligated to maintain and protect the property in its natural state; Defendants-Appellees application of herbicides, either directly or by drift, damaged his property; he did not consent to the application of herbicides to the property; the Corps has directed him to develop an Adaptive Management Plan to address the damages, the costs of which is expected to be significant; pursuant to the adaptive management plan, "thinning or timber harvest is permitted when it is for ecological improvement"; and that he "does not" need permission from the Corps to plant or supplemental plant. "Trespass is defined as an unlawful physical invasion of the property or possession of another person." *Davis,* 794 So.2d at 75. "It is well settled in Louisiana that damages should be awarded for illegal trespass on one's property, even when committed in good faith and though proof of the amount of the damages actually sustained by the proprietor be uncertain." *Wendorf,* 394 So.2d at 1254. As such, we find that that the trial court erred by holding that the MBI, the document that

16

requires restoration and corrective actions, precludes damages for trespass. Accordingly, we reverse the trial court's ruling on this issue.

## CONCLUSION:

Plaintiffs-Appellants, Sicily Island Holdings, LLC, asserts three assignments of error as to why the trial court erred in granting Defendants-Appellees, United States Aviation Underwriters, Inc.'s summary judgment: (1) limiting Plaintiffs-Appellants' property damage to an amount that does not exceed the change in value of the property from before to after the alleged damage occurred; (2) dismissing Plaintiffs-Appellants' claim for treble damages and attorney's fees; and (3) dismissing Plaintiffs-Appellants' claims for trespass. We find merit to Sicily Island's first assignment of error. Accordingly, we reverse the trial court's ruling on this issue and remand the matter for further proceedings. We find no merit to Sicily Island's second assignment of error. Accordingly, we affirm the trial court's ruling on this issue. We find merit to Sicily Island's third assignment of error. Accordingly, we reverse the trial court's ruling on this issue.

Costs of these proceedings are assessed equally between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SICILY ISLAND HOLDINGS, LLC., EL AL.

VERSUS

UNITED STATES AVIATION UNDERWRITERS, INC., ET AL.

**PERRET, CANDYCE, J.  CONCURS WITH REASONS:**

I respectfully concur with the majority's finding that there are genuine issues of material fact regarding the amount of damages in this case as well as whether the chemical drift gives rise to a trespass claim.  I also agree with the majority's conclusion that summary judgment was properly granted on Plaintiffs' claim for lost timber value and/or treble damages pursuant to La.R.S. 3:4278.1; however, I write separately merely to emphasize why Plaintiffs are not entitled to these damages under the Timber Trespass Statute.

Louisiana Revised Statutes 3:4278.1 prohibits "any person" from cutting, felling, destroying, removing, or diverting for sale or use, tree, growing or lying "on the land of another," without the consent of "the owner or legal possessor."  Because La.R.S. 3:4278.1 allows the imposition of treble damages and attorney fees, it "is clearly a punitive statute and, therefore, must be strictly construed."  *Sullivan v. Wallace*, 10-0388, p. 7 (La. 11/30/10), 51 So.3d 702, 707.  The supreme court noted that "the legislative purpose behind La.Rev.Stat. 3:4278.1 is to protect those with interests in trees from loggers who enter their property without permission to harvest timber illegally." *Id.* at 709.

Considering the legislature's purpose in passing the timber trespass statue as well as the fact that the record before us is void of any evidence of trees being cut on Mr. Harrison's property, I agree with the trial court's judgment that dismissed Plaintiffs' claims for lost timber value and/or treble damages.